Good morning, everyone. The first matter is Wilson v. Huntington. Who would like to speak on this matter? As you are aware, we're delivering a split argument on this issue. I will be using the first eight minutes to discuss a potential Bruton violation. Ms. Slayton will then take the next seven minutes to discuss harmless error, and we request that two minutes of that be reversed. I'm relying a lot on the prior decision of our courts in that case. In that case, it seems that the parties that were found not guilty in Santiago's entire trial strategy was that he specifically identified the other two occupants that they found. And in this case, unlike Santiago, Haines never claimed to trial that he specifically identified his two close experiences. Does that make sense to you? Not necessarily, Your Honor. The similarity to this case with Vasquez is the fact that in both instances, the redacted statement still points to the existence of a co-defendant, and additionally, there was an obvious inference created by that that was also strengthened by the linkage with other testimony during the trial. In Vasquez, there was also the shouting out that he was the shooter in that crime. And in this case, the testimony of the victim's girlfriend directly confirmed the facts contained within Mr. Haines' statement, thereby verifying that Wilson was in fact the defendant. Well, Wilson made a number of calls, at least nine on the day of the murder. But I almost get the impression in Vasquez that it just didn't feel right, especially when although the issues were purportedly covered, you had three things happen in addition to Santiago's statement, the redacted statement. You had his girlfriend or wife, Rosado, blurting out the name of Vasquez. You had the prosecution making an errant statement at closing saying it couldn't have been Rivera, the third guy, but therefore it's by pointing to Vasquez. And you had the jury coming back in a note to the court saying, in effect, isn't it Vasquez? So you had three things. I mean, it was very clear. Everybody had it in mind. But when you look at the statement here, it's, you know, I, Janelle Haines, and two other people met up at the apartment building, and I told one of the guys, et cetera. One of the guys said, I'm not turning back now. I've seen the other two guys running to the meet-up spot. I've never seen one of the guys again. That sounds at least plausible, whereas what happened in Vasquez didn't seem so plausible, especially when you had the redactions the way they were done in that case. Well, Your Honor, you know, as was recognized by the Honorable Darnall Jones in his 1925 opinion on this issue, he pointed out that the term disc act clearly still makes reference to the existence of the defendant. You said 1925? I'm sorry. Under PA Rules of Simple Procedure 1925, the defendant was issued to the Supreme Court on initial appeal. And this clear reference was, in his words, a violation of the Confrontation Clause in the private defendant of a fair trial. Now, the trial judge was in the best possible position within the dynamics of the trial to make this determination on any prejudice that occurred. And as you're aware, under ADEPA, this court is required to offer deference to a state court on findings of fact and conclusions of law unless they rely on an unreasonable application of clearly established federal law. But in this case, I mean, Grutten, you start off with a clear statement that it was – it expressly made the person. Richardson v. Mars, you can have redactions. Gray, but when you have redactions that make it so clear that it's actually pointing to the defendant, then you've got a problem. Here it's not so clear. And it is clear that you can have redactions based on Richardson v. Mars. Yes, but in Richardson v. Mars, where that differs from the case here is that any existence of a co-defendant was completely eliminated. From the statement of issue in that case, the only way it became an issue was through the testimony of the co-defendant herself when she actually placed herself at the scene of the crime. Whereas here, the redaction still points to the co-defendant with the statement, this guy. And therefore, it still creates a speculation in the jury that is very reasonable to determine then that speculation is confirmed when the jury merely has to look at the table and there's only two choices for them to determine who that redaction is pointing to. And when they already know that the statement came from one of those defendants, it's obvious to conclude that the other one – But here there were three people, right? Yes, there's allegedly three people. The third man named, quote, Kev. However, we're not sure if that person was ever even caught. He was never brought up in the same trial. His name was even in quotes, so no one even knows surely what his identity is. Therefore, the jury kind of could, you know, take that as a – just toss aside when they're speculating as to what this is referring to because the state brought only two people to trial in front of them, we heard. So therefore, it is – No, actually, it could have been redacted to eliminate existence as most of the redactions pointing to Wilson did not even fully relate to the actions of Haynes himself. So those entire sections could have been removed to eliminate any possible violation of the Convocation Clause while still holding the impact that Haynes himself was guilty of the crime. So how would you – what would you have reacted? Deleted? For instance – For example, pages of appendix 157 to 159, what would you have done? Well, for instance, in the statement to the Philadelphia police, there was statements of, yes, did you know Benjamin Miller essentially? Yes, I met him through this guy. If you had just eliminated this guy and said, yes, I met him about a month before this thing happened, just a simple thing like that, eliminating the existence, still carries the power of the statement against Haynes while removing any potential Convocation Clause violation on the part of Wilson. Well, what about the point that I read to you that two other people met up at the apartment. One of the guys said, I've seen two other guys running into the meetup spot. I've never seen one of the other guys again. That seems to fit. That could fit, and in many cases where it has been deemed that redactions are allowed, they are more general in interpretation. The problem in this case, as was noted by Judge Jones, is that there are specific instances where the redaction is particular in states such as this guy. Therefore, it points to the existence of Wilson, and then the redacted statement as a whole then becomes a problem. One of the problems here is that since that day, with Hickman, and Harrington v. Richter and Bobby v. Hickman in particular, has made it clear that an unreasonable application of clearly established federal law must be, quote, so egregious that it lies beyond any possibility for fair-minded disagreement. It seems here that when you look at the statement, it's not so egregious that it lies beyond any possibility for fair-minded disagreement. Reasonable people could look at this differently. You're going to hear proposals now to do that. I see that my time is up. Thank you. When you take a reading of all of the circuits as a whole on this issue, the overarching rule comes down to the fact that whether or not the redaction actually points to the existence of a codefendant. When you're discussing the minutia and grammar of particular usages, all of those are important in each fact-specific case. However, the overarching rule that needs to be applied is whether or not the statement creates an obvious reference to the existence of a codefendant and, therefore, is a violation of his consultation clause rights and creates a prejudice in non-fair trial. I will pass it off now to my associate. Thank you. May it please the Court. My name is Carolyn Slayton, and I represent the opponent, Fred Wilson. For the next five minutes, I will be discussing the admissions of Painter's redacted statement, how they had a substantial and injurious effect on the jury and, therefore, was not harmless error. Wilson, I mean, you can look to other evidence. So let's forget the statement for the moment. Wilson's own statement to the police seems to condemn him, doesn't it? No. He admits that he was the person who repeatedly called Miller to see if he was at home on the day of the murder. Yes, he does admit that he called Miller multiple times on that day. But phone calls don't rise to the level of murder. I mean, I'd be dead with the number of calls my mom gives me over and over again. But it doesn't rise to the level of proving beyond a reasonable doubt that he had the intent to kill Miller. Your mom's not going to do harm to you, is she? No, but she does call a lot. What about? That is Ms. Jacob's testimony that Mr. Wilson called her numerous times to ask about Miller and what had happened on that day. And that seems completely reasonable considering that they were business partners and friends for over a year. We don't see that as something that is creating an intent to murder. Yes. Ricky Williams, the police informant. Again, his statement was made seven months after the incident. And all that is proved by that statement is that he knew Miller and that he knew the crew. But he makes perfectly clear through that statement that he doesn't want to be involved with that crew, that he didn't send them in directly to mess up Miller. He doesn't want to be involved with them. He said they're cold-blooded and unpredictable. That could work against you by saying that I used a crew that I realized they might kill somebody. But then also when you look at Supplemental Appendix 114 where it says, Wilson, I was there. That's all they got. Williams, you didn't go in or get nothing, did you? Wilson, yes, I did. Williams, you got money or what or whatever? Wilson, ha-ha, that's why I nailed him. I nailed him. Yes, that statement is in there. But, again, Wilson, that statement places Wilson in the house. But the only eyewitness, Ms. Jacob's testimony, she doesn't place Wilson in the house. And she can make a positive identification of Mr. Wilson because she knew who he was. So those testimonies or those statements are just contradictory. And they're right. Who can make a positive identification of Wilson? The girlfriend, Ms. Jacob. She saw Haynes with his mask off. She said, Wilson, if he was in the house, there was some evidence that he was. It wasn't just the driver. She didn't know who that person was. She states that Wilson, she makes it clear that Wilson wasn't in the house, that she recognized Haynes only through knowing Wilson, but she does not place Wilson at the scene of the crime on that day. She merely connects him through the phone calls. But it sounds like Wilson placed himself at the scene of the crime, based on what I just read to you. Again, that was made seven months after the incident, and that was— But the timing, does that really make any difference? If I kill someone, I might five years later make a statement and admit to twice. Can't that be played back again? No, Your Honor. I mean, that's correct. But the statement, I nailed him, is also ambiguous. It's susceptible to multiple interpretations. It doesn't necessarily mean I murdered him. That's why you leave it up to the jury. Exactly. And there are so many different interpretations. If I nailed him, according to the Oxford English Dictionary, it could mean I apprehended, incriminate, convict, rob, cheat. So that leaves plenty of room for reasonable doubt, which is why the trial, the prosecution would have never been able to prove reasonable doubt. Therefore, the admission of the statement that links him there is not harmless error. I'm missing something here. If they play the statement to the jury and the jury convicts, I mean, it almost looks here as if the Bruton issue is subsidiary to the other evidence against Mr. Wilson. It's our position that the evidence, the three pieces of evidence, which would be the Williams testimony, Mr. Wilson's statement to the police, and Ms. Jacobs' testimony, could not conclusively prove beyond reasonable doubt that Wilson had intent to murder or commit murder, because alone it only proves that he knew Milla, that he knew Haynes, and that he had known the crew. It doesn't make him prove that he was guilty of murder or that he had the intent to murder. And that's why we ask that this court reverse the decision below and grant a new trial. Thank you. Thank you very much. Good morning, and may it please the court. My name is Susan Affronti. I represent the Commonwealth Appellees in this matter. I think there are two basic legal constructs at work here. The first is our general preference from the Bureau for joint trials, and the second is the presumption that jurors will follow their instructions. Now, in 1969, in Bruton, the United States Supreme Court said that there is a narrow exception to the general rule that jurors follow their instructions. When a jury is faced with a statement that incriminates on its face, that specifically names the co-defendant, then we believe that the jury can't follow an instruction not to use that statement. But the trouble is, I mean, we all understand what the law is, but when you use these active statements, are they being used in such a way that, while you may not be saying the person's name, it's sort of like, you know, I know who it is, I'm out there. And that's the problem that you have when you have a joint trial. Would it have been possible, as your opposing counsel said, for the Commonwealth simply to have rejected and changed the statement to eliminate any reference, not only to Wilkie's name, but also his position? Well, I would point out that, first off, that's not required, and that's the big question, the primary question. But you wouldn't be here if it had been done that way. No, I wouldn't. However, I would also point out there was a conspiracy charge in this case. And if you remove all reference to the other participants, Haynes's statement can be used against Haynes as to his conspiring with other people. I would actually point – I can't find it right now. There is a case, I think it's Jass from the Second Circuit, that talks about the fact that when there is a conspiracy, you can't remove all reference, of the other participant's existence, because the statement giver is also charged with conspiracy. First off, the statement often won't make sense. And I'm not at all convinced that in this case you could have removed the existence of the two men. I think there are probably instances where – Mr. Ward gave one example where you could have used a metaphor. I thought that was an interesting example, actually, Your Honor, because he said, if I'm remembering right, I met him through a guy. I don't know why there's any reason we would assume that's Wilson. It could actually be some other wholly different guy. He didn't say through the guy or – that's not even enough – the guy involved in this crime, my conspirator here. It's not terribly pointed. It actually could be, I think, a whole other first. For example, the statement that Haynes's second statement, the guy picked me up and his girlfriend's car. What do you make of that? Honestly, you probably could take it out. It gives details of the crime. Those details are certainly admissible against Haynes. I think, honestly, my advice to our prosecutors whenever they talk to me about these issues is to limit the existence of the co-defendant whenever you can. But you are trying to give a chronology, and you're trying to tell a story against Haynes. And I would just point out the standard of review is very important in this case. How do you distinguish the stakes on this in Vasquez? Well, I think Your Honor did a beautiful job of it, actually. In Vasquez, we had – Not even my wife felt the idea did a good job of anything. But you did, Your Honor. It was exactly – pretty much exactly what's on my paper right here. In Vasquez, Santiago's defense made it clear that Vasquez was the other guy. Santiago's wife expressly said Vasquez was the guy who murdered him. The prosecutor, unfortunately, slipped in her closing, and she said Vasquez was the other guy. And the jury knew. The jury told us. They asked the statement named – are we really not allowed to use Santiago's statement that Vasquez did it against Vasquez? What I'm doing is I'm inferring because, as you know, at the end of Vasquez, they said we don't deal with all these other issues, and that we're saying that with regard to the gluten issue, we're looking at an unreasonable application. They did. They understood what the federal law was, but they unreasonably applied it. And it seems like that has a lot of points that are congruent with this particular case. I would point out that, in my opinion, the only thing that's congruent with this case is the fact that there were two co-defendants. And actually, there's barely even that, because Kev is a third person in the statement, and he's not brought to trial. By the way, whatever happened with Kev? It's my understanding no one ever found out who Kev was, actually. I think Haynes refused to name who he was. We had no evidence or information as to who he was, and I don't believe he was ever charged or found. I don't know that Kev actually exists. I think it's conceivable that in Haynes' statement he was limiting Wilson's responsibility. Wilson was his cousin. He was a friend of his, it seemed like, and he could have been. In Haynes' initial confession, he said he didn't do any of it. And then in his second confession, he said, well, fine, yeah, I was the shooter. But there was this guy, Kev, who was in there with me. It's entirely conceivable, based especially on Wilson's own words, that Wilson was the man who was there that day, and Wilson was the man who shouted up the steps as Haynes went upstairs, kill him if he doesn't give you the money. We don't know. Ms. Jacobs didn't identify him, as my opponent says. However, I would point out Ms. Jacobs couldn't identify the person at all who was downstairs because he was wearing a mask. Well, I would certainly agree. I just think that that certainly can't be the only thing we look at. But the courts have indicated, other courts have indicated, that the existence of a conspiracy makes it impossible sometimes to redact the statement fully so to eliminate all reference to the defendant's existence. And I would really go back to the standard of review here. The United States Supreme Court has never said that we have to redact all reference to the defendant's existence. And that's a very important point here. If this was United States versus Wilson, we could discuss how the law could be extended and possibly argue that we should always redact all reference to the defendant's existence. But this is a habeas case. This is a state case. The state of Pennsylvania says that's not the rule. That's not unreasonable. In fact, it's consistent with the law in many circuits, and particularly under the new case law in Harrington and Bobby and Knowles. These cases tell us you have to start from those precedents, the holdings. And what we're really talking about here is extending dicta in gray. We can do that, but not in a habeas context. We have to let Pennsylvania reach its conclusion and move forward, see if there is at least reason to be. Well, as to harmless error, I think Wilson's own words are the best evidence against Wilson. Wilson confessed to the police. I think it is inconceivable that anyone would believe that we nailed him if he means anything other than we killed him. He knew he was dead when he said we nailed him. If he meant we cheated him, I think he would have been far more clear about that. This is not an instance – we mentioned the passage of time and the fact that it's seven months later when Ricky Williams comes forward. I agree. That's concerning. The police recognized that, too. That's why they made Williams wear the wire. And they sent him in, and he talked again to Wilson. Wilson again confessed. Wilson again said it was his crew, described them as killers, and he said that we nailed him for what he did. Wilson made it quite clear this was his killing. This was his ordered job, that Haynes went in there and took care of things. Either Wilson was downstairs that day and literally said, kill him, as the Haynes went upstairs, or he as much as did when he sent him in and said, take care of things, do whatever you need to do. And we don't know, which it is. The evidence – the best evidence against Wilson was not the statement. The best evidence against Wilson was his own statement and the recorded conversation with Williams. Thank you. Thank you, Russ. First off, I'd like to start with the conspiracy. The conspiracy is proved by the operative facts. There's no need to rely on the statements to prove the conspiracy against Haynes. And the conspiracy charge would require severance. If that was the Commonwealth's first goal, that could have been done. I think what you're saying is that if you have a conspiracy, you have to have more than one, so you can't just do that to the existence of anybody but the Wilson case. Right, but if conspiracy was the first issue that they were going after, then severance of the trial would have been the best issue without having the Bruton violation. And also, as to the standard of review – I mean, obviously, severance of the trial would have solved everything here. But for efficiency purposes, that's not the way it's done. I mean, you know, and you and I aren't going to change that. So the question is, when you have a joint trial, what can you do before the people are afforded the right process? And part of the process here, was there a Bruton violation? And if so, was it harmful? And where I'm struggling is to find the Bruton violation with regard to this particular statement. And also, even if you eliminate both of Haynes' statements – I think Mr. Conte said, Mr. Conte says that he's got Wilson's own words, really, quote, nailing him as opposed to just nailing the other party. As I said before, we don't find that the other three pieces of evidence are condemning enough to convict Wilson beyond reasonable doubt. And it seems that the Commonwealth placed the conspiracy charges of Haynes over the Sixth Amendment rights of our client. Furthermore, if the idea of the Kev doesn't really exist, then that's even more damning to Wilson with the redacted statements being included. The idea is that there was a clear and obvious reference made through these redacted statements that the trial judge witnessed after in which he issued his 1925 opinion that there was a clear and obvious reference that linked Wilson to the crime that was a constitutional violation – But Jacob's testimony linked Wilson to the crime, right? No, the Jacob testimony – You identified Wilson as the person who repeatedly called in the day of the murder. – linked Wilson to Haynes and, again, linked him as a phone – a repeated phone caller. That doesn't rise to the level of murder or intent to kill, and that's why we just asked for a new trial. But it makes him possibly involved with respect to what happened. In effect, the inference would be from the prosecution that he called to be sure that Miller was home in order that the proof, whether the evidence was true or not, would then come to the House. Once he found that he was home, the two people came to the door very quickly thereafter. That evidence is so what is clearly and obviously linked to Wilson. If the statement had been more properly redacted, it wouldn't have been so clearly and obvious to the jury that Wilson was the one that made the phone call. Let's go back to Judge Brett's question of your co-counsel, then. What would you have done with regard to the statement of Haynes to redact that statement? Just as Mr. Ward had said, I would have made it more of a first-person statement. I was there. I entered the building. I did this, as opposed to saying, I did this with this, this guy. I mean, he could have said, I was there. I met him a month ago. He does not have to say, I was there with Wilson. I met him a month ago, or with some guy. The linkage is just too obvious and clear, which is what the court has decided. Well, two other guys, one of the guys. I mean, if you're a defense counsel here, you've got to – Kev is not there. So one of the things you're going to try to do is put a lot of the pointing the finger to this third-person Kev. And when you read these statements, then it's up to defense counsel to say, okay, it's this one or that one. I'm going to try to do everything I can show to say that it's the person who's not there who can't be found. And the problem that you have here is that you take away all of that, all of the statements that relate to Haines, both statements. And you've got Mr. Wilson's own words being played to the jury, and they're pretty clear. Again, I can only reiterate that those statements, I nailed him, are ambiguous. I nailed him doesn't mean I murdered him. And that would be the argument. But then it's up to the jury to make the call as to whether they are not ambiguous and so unambiguous that beyond a reasonable doubt Mr. Wilson is guilty and appears to be guilty. Well, that's why we request a remand for a new trial, for the jury to be able to once again interpret the ambiguity of those statements. If not at once, why do they need to do it again? You can only have them do it again if you can show that there was a brutal violence. And your best argument by far is Vasquez, but there are ways to distinguish that. There are definitely ways to distinguish – I'm over it. There are ways to distinguish Vasquez, but the idea is that there was such a clear and obvious indication of our client in this case and that the evidence without the redacted statements could not have proved him beyond a reasonable doubt. And therefore, we request that this court reverse the opinion below and remand for a new trial. Thank you. The case will be paid.